SKAPIK LAW GROUP
Mark J. Skapik (SBN 164957)
Email: mskapik@skapiklaw.com
Geralyn L. Skapik (SBN 145055)
Email: gskapik@skapiklaw.com
Blair J. Berkley (SBN 222293)
Email: bberkley@skapiklaw.com
Matthew T. Falkenstein (SBN 333302)
Email: mfalkenstein@skapiklaw.com
5861 Pine Avenue, Suite A-1
Chino Hills, California 91709
Telephone: (909) 398-4404
Facsimile: (909) 398-1883

Attorneys for Plaintiff VICTOR DIAZ SANDOVAL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

VICTOR DIAZ SANDOVAL, an individual,

Plaintiff,

vs.

COUNTY OF RIVERSIDE; DAVID HOLM, an individual; MARTIN TOCHTROP, an individual; and DOES 1 through 20, inclusive,

Defendants.

Case No.

**COMPLAINT FOR:**

1. 42 U.S.C. § 1983 (failure to protect)
2. 42 U.S.C. § 1983 (failure to intercede)
3. 42 U.S.C. § 1983 (failure to provide adequate medical care)
4. Negligence
5. Negligence per se

**JURY DEMAND**

///

///

Plaintiff VICTOR DIAZ SANDOVAL ("Plaintiff") alleges as follows:

**PARTIES**

1. Plaintiff is an individual and resident of Los Angeles, California.

2. Defendant County of Riverside ("COUNTY") is a political subdivision of the State of California.

3. The Riverside County Sheriff's Department ("RCSD") is a COUNTY Department that provides law-enforcement services within the COUNTY. RCSD operates COUNTY jails.

4. Defendant DAVID HOLM ("HOLM") is Correctional Captain of the COUNTY's Cois M. Byrd ("Southwest") Detention Center located at 30755-B Auld Road, Murrieta, California 92563. HOLM is sued in his personal capacity.

5. Defendant MARTIN TOCHTROP ("TOCHTROP") is Correctional Captain of the COUNTY's John J. Benoit ("Benoit") Detention Center located at 82675 St. Hwy 111, Indio, California 92201. TOCHTROP is sued in his personal capacity.

6. The true names of Defendant DOES 1-20 are unknown to Plaintiff who, therefore, sues these Defendants by such fictitious names. When the true names of these Defendants are ascertained, Plaintiff will amend this Complaint to allege their true names. DOES 1-20 are sued in their personal capacities.

7. Defendant DOES 1-10 are Deputies in the RCSD.

8. Defendant DOES 11-15 are health-care providers at the Southwest Detention Center.

9. Defendant DOES 16-20 are health-care providers at the Benoit Detention Center.

**JURISDICTION AND VENUE**

10. This Court has original jurisdiction over Plaintiff's 42 U.S.C. section 1983 claims pursuant to 28 U.S.C. sections 1331 and 1343. The Court has supplemental jurisdiction over Plaintiff's state-law claims.

**PRESENTATION OF WRITTEN CLAIM**

11. On February 3, 2022, in compliance with California *Government Code* sections 910-915.4, Plaintiff presented to COUNTY a tort claim. COUNTY rejected the claim on February 7, 2022.

**GENERAL ALLEGATIONS**

12. On Monday August 9, 2021, Plaintiff was arrested for murder and driving under the influence and booked at the Robert Presley Detention Center, 4000 Orange Street, Riverside, California 92501. Plaintiff was not arraigned while incarcerated at the Presley Detention Center.

13. On Thursday August 12, 2021, Defendant Sheriff Deputies DOE 1 and 2 were ordered to transport Plaintiff, at a high rate of speed, to the Southwest Detention Center in order to arrive there in time (before 12:20 a.m., August 13, 2021) to "re-book" Plaintiff.

14. Defendant DOES 1 and 2 loaded Plaintiff and other inmates into a Sheriff's Department van. The hands of Plaintiff and the other inmates were cuffed and secured to waist chains. Their legs were likewise cuffed.

15. The van had no seat belts or other safety restraints to secure Plaintiff, or any of the other inmates, to a seat in the prisoner compartment.

16. Hence, it was foreseeable that, in the event of an accident, Plaintiff and the other inmates would fly across the prisoner compartment like rag dolls. Since their hands were cuffed and secured to waist chains, there was no way for the inmates to break their falls.

17. At or about 11:20 p.m., the van, with DOE 1 driving and DOE 2 in the passenger seat, departed Riverside for Murrieta at a high rate of speed.

18. Defendant DOE 1 drove the van at such an excessive rate of speed (near 100 miles per hour), and so dangerously and recklessly, as to cause multiple collisions. Plaintiff and the other inmates were repeatedly thrown across the prisoner compartment,

hitting the metal posts and other hard fixtures inside and/or comprising the prisoner compartment, and landing on top of each other.

19. Plaintiff hit the right side of the van first, and then the front of the prisoner compartment, with his head. When he was thrown again, he hit the left side of the van.

20. Plaintiff suffered serious injuries to his right eye, forehead, teeth, right hand, and shoulder.

21. In reckless disregard for Plaintiff and his constitutional rights, Defendants DOE 1 and 2 did not stop the van despite the collisions, the sounds of the bodies being hurled about in the prisoner compartment, and the cries and screams of the inmates.

22. Upon arrival to the Southwest Detention Center, Plaintiff was examined by Defendant nurse DOE 11 and Defendant Correctional Officers DOES 3 and 4. A detective took photographs of Plaintiff and the other inmate passengers. Although the large bumps on his head, the eye injuries, and the blood made it obvious that Plaintiff was seriously injured and needed emergency medical care, Defendant DOES 3, 4, and 11, with deliberate indifference to Plaintiff and his constitutional rights, failed to send Plaintiff to an emergency room.

23. Plaintiff was "released" (with his handcuffs still on) for a moment, taken back into custody, re-booked, and admitted to the general population at the Southwest Detention Center.

24. Over the next three months, Plaintiff wrote numerous grievances to complain about his injuries and the absence of treatment for his injuries.

25. With deliberate indifference to Plaintiff and his constitutional rights, Defendants Correctional Captain HOLM and DOES 3-6 failed to deliver Plaintiff to the required health-care providers.

26. On October 7, 2021, and October 19, 2021, Plaintiff was seen by Defendant DOES 11-15 at the Southwest Detention Center and complained about the pain and loss of vision in his right eye, his head, right hand, and shoulder pain, and his cracked wisdom teeth. With deliberate indifference to Plaintiff and his constitutional

rights, DOES 11-15 did not cause Plaintiff to be referred to an optometrist, orthopedist, or dentist.

27. Finally, on or about November 8, 2021, Plaintiff was delivered to an optometrist who determined that Plaintiff had a detached retina. The optometrist told a corrections officer that Plaintiff required immediate medical care. The corrections officer responded that he would complete a written request for such care. The optometrist responded that Plaintiff required *immediate* care.

28. Hence, on or about November 9, 2021, Plaintiff underwent surgery on his right eye. The surgeon confirmed that the retina was detached and was able to partially reattach it. However, the three-month delay in performing the surgery limited its effectiveness.

29. As a proximate result of Defendants' deliberate indifference and the delayed surgery, Plaintiff lost much of the vision in his right eye.

30. The eye surgeon prescribed eye drops (4 times daily) to aid in the healing and recovery process.

31. On or about January 1, 2022, Plaintiff was transferred to the Benoit Detention Center in Indio, California.

32. At the Benoit Detention Center, Plaintiff continued to voice concerns to Defendant DOES 16-20, and write grievances, regarding his cracked wisdom teeth, continuing head, right hand, and shoulder pain, and the failure of DOES 16-20 to provide his eye drops four times daily as prescribed.

33. With deliberate indifference to Plaintiff and his constitutional rights, Defendants TOCHTROP and DOES 16-20 failed to refer Plaintiff to a dentist or orthopedist.

34. With deliberate indifference to Plaintiff and his constitutional rights, Defendants TOCHTROP and DOES 16-20 failed to provide Plaintiff his prescribed eye drops four times daily.

35. As of July 27, 2022, Plaintiff remains a pre-trial detainee.

**I.**

**FIRST CAUSE OF ACTION**

**FAILURE TO PROTECT PLAINTIFF IN VIOLATION OF FOURTEENTH AMENDMENT**

**[42 U.S.C. § 1983]**

(By Plaintiff Against Defendants DOE 1)

36. Plaintiff incorporates by reference paragraphs 1-35 as though fully set forth herein.

37. On August 12, 2021, Plaintiff was a pre-trial detainee held at the Robert Presley Detention Center, 4000 Orange Street, Riverside, California 92501. Plaintiff was not arraigned while incarcerated at the Presley Detention Center.

38. Defendant Sheriff Deputies DOE 1 and 2 were ordered to transport Plaintiff, at a high rate of speed, to the Southwest Detention Center in order to arrive there in time (before 12:20 a.m., August 13, 2021) to "re-book" Plaintiff.

39. Defendant DOES 1 and 2 loaded Plaintiff and other inmates (all handcuffed and shackled) into a Sheriff's Department van.

40. The van had no seat belts or other safety restraints to secure Plaintiff, or any of the other inmates, to a seat.

41. With DOE 1 driving and DOE 2 in the passenger seat, the van departed Riverside at or about 11:20 p.m. at a high rate of speed to arrive at Southwest Detention Center before 12:20 a.m.

42. DOE 1 drove so fast, and so dangerously and recklessly, as to make it obvious to a reasonable officer in the circumstances that Plaintiff was at extreme risk of serious injury or death.

43. In driving the van recklessly and at excessive speeds, DOE 1 acted under color of state law.

44. DOE 1 made the intentional decision to drive extremely fast, and recklessly, in order to deliver Plaintiff to the Southwest Detention Facility by 12:20 a.m.

45. DOE 1's conduct and driving put Plaintiff at extreme risk of serious injury or death.

46. Although DOE 1 had some near misses, he decided not to slow down to abate the risks to Plaintiff and the other unsecured inmates in the prisoner compartment, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved. The consequences of DOE 1's conduct and driving were obvious.

47. DOE 1 drove the van at such an excessive rate of speed, and so dangerously and recklessly, as to cause multiple collisions. Plaintiff and the other inmates were repeatedly thrown across the prisoner compartment, hitting the metal posts and other hard fixtures inside and/or comprising the prisoner compartment, and landing on top of each other.

48. Plaintiff hit the right side of the van first, and then the front of the prisoner compartment, with his head. When he was thrown again, he hit the left side of the van.

49. Plaintiff suffered serious injuries to his right eye, forehead, teeth, right hand, and shoulder.

50. By deliberately driving at excessive speeds with Plaintiff unsecured to his seat, DOE 1 violated Plaintiff's Fourteenth Amendment rights and caused his injuries.

51. In reckless disregard to Plaintiff and his constitutional rights, DOE 1 did not stop the van despite the collisions, the sounds of bodies being hurled about in the prisoner compartment, and the cries and screams of the inmates.

52. DOE 1's conduct was malicious and oppressive and was done with a willful, wanton, and conscious disregard for Plaintiff's Fourteenth Amendment rights.

///

///

**II.**

**SECOND CAUSE OF ACTION**

**FAILURE TO INTERCEDE**

**[42 U.S.C. § 1983]**

(By Plaintiff Against Defendants DOE 2)

53. Plaintiff incorporates by reference paragraphs 1-52 as though fully set forth herein.

54. On August 12, 2021, Plaintiff was a pre-trial detainee held at the Robert Presley Detention Center, 4000 Orange Street, Riverside, California 92501. Plaintiff was not arraigned while incarcerated at the Presley Detention Center.

55. Defendant Sheriff Deputies DOE 1 and 2 were ordered to transport Plaintiff, at a high rate of speed, to the Southwest Detention Center in order to arrive there in time (before 12:20 a.m., August 13, 2021) to "re-book" Plaintiff.

56. Defendant DOES 1 and 2 loaded Plaintiff and other inmates (all handcuffed and shackled) into a Sheriff's Department van.

57. The van had no seat belts or other safety restraints to secure Plaintiff, or any of the other inmates, to a seat.

58. With DOE 1 driving and DOE 2 in the passenger seat, the van departed Riverside at or about 11:20 p.m. at a high rate of speed to arrive at Southwest Detention Center before 12:20 a.m.

59. DOE 1 drove so fast, and so dangerously and recklessly, as to make it obvious to a reasonable officer in the circumstances that Plaintiff was at extreme risk of serious injury or death.

60. Although DOE 1 had some near misses, he decided not to slow down to abate the risks to Plaintiff and the other unsecured inmates in the passenger compartment, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved. The consequences of DOE 1's conduct and driving were obvious.

61. DOE 2 watched DOE 1 drive recklessly, and observed the near misses, for several minutes, and appreciated the high degree of risk involved.

62. It was foreseeable to DOE 2 that DOE 1's conduct and driving was likely to cause severe injuries to Plaintiff the other inmates in the van.

63. DOE 2 had ample time and opportunity to tell DOE 1 to slow down or to radio a RCSD dispatcher or supervisor for assistance.

64. Nevertheless, in reckless disregard to Plaintiff and his constitutional rights, DOE 2 failed to intercede and to cause DOE 1 to moderate his speed.

65. In watching DOE 1 drive recklessly, and in failing to intercede, DOE 2 acted under color of state law.

66. DOE 2's failure to intercede was a proximate cause and moving force in the deprivation of Plaintiff's Fourteenth Amendment rights.

67. DOE 2's conduct was malicious and oppressive and was done with a willful, wanton, and conscious disregard for Plaintiff's Fourteenth Amendment rights.

## III.

## THIRD CAUSE OF ACTION

## FAILURE TO PROVIDE ADEQUATE MEDICAL CARE IN VIOLATION OF FOURTEENTH AMENDMENT

**[42 U.S.C. § 1983]**

(By Plaintiff Against Defendants HOLM, TOCHTROP, and DOES 3-20)

68. Plaintiff incorporates by reference paragraphs 1-35 as though fully set forth herein.

69. On Thursday August 12, 2021, Defendant Sheriff Deputies DOE 1 and 2 were ordered to transport Plaintiff, at a high rate of speed, to the Southwest Detention Center in order to arrive there before 12:20 a.m. (August 13, 2021).

70. Defendant DOES 1 and 2 loaded Plaintiff and other inmates (all handcuffed and shackled) into a Sheriff's Department van.

71. The van had no seat belts or other safety restraints to secure Plaintiff, or any of the other inmates, to a seat.

72. With DOE 1 driving and DOE 2 in the passenger seat, the van departed Riverside at or about 11:20 p.m. at a high rate of speed to arrive at Southwest Detention Center before 12:20 a.m.

73. Defendant DOE 1 drove the van at such an excessive rate of speed, and so dangerously and recklessly, as to cause multiple collisions. Plaintiff and the other inmates were repeatedly thrown across the prisoner compartment, hitting the metal posts and other hard fixtures inside and/or comprising the prisoner compartment, and landing on top of each other.

74. Plaintiff hit the right side of the van first and then the front of the prisoner compartment with his head. When he was thrown again, he hit the left side of the van.

75. Plaintiff suffered serious injuries to his right eye, forehead, teeth, right hand, and shoulder.

76. Upon arrival to the Southwest Detention Center, Plaintiff was examined by a Defendant nurse DOE 11 and Defendant Correctional Officers DOES 3 and 4. Although the large bumps on his head, the eye injuries, and the blood made it obvious that Plaintiff was seriously injured and needed emergency medical care, Defendant DOES 3, 4, and 11 made the intentional decision to deny Plaintiff medical care in order to save costs or to punish Plaintiff. Reasonable nurses and corrections officers in the circumstances would have appreciated the high degree of risk that delayed treatment could have serious consequences for Plaintiff's vision and health.

77. The denial of emergency medical care on the morning of August 13, 2021, put Plaintiff at substantial risk of suffering serious harm.

78. In denying emergency medical care on the morning of August 13, 2021, Defendant DOES 3, 4, and 11 acted under the color of state law.

79. As a proximate result of the decisions of DOES 3, 4, and 11 to deny Plaintiff emergency medical care, Plaintiff suffered further serious and permanent injuries and substantial physical and emotional pain and suffering.

80. Plaintiff was "released" (with his handcuffs still on) for a moment, taken back into custody, re-booked, and admitted to the general population at the Southwest Detention Center.

81. Over the next three months, Plaintiff wrote numerous grievances to complain about his injuries and the absence of treatment for his injuries.

82. With deliberate indifference to Plaintiff and his Fourteenth Amendment rights, Defendants HOLM and DOES 3-6 and 11-15 made the intentional decision to deny Plaintiff medical care in order to save costs or to punish Plaintiff. Reasonable nurses and corrections officers in the circumstances would have appreciated the high degree of risk that delayed treatment could have serious consequences for Plaintiff's vision and health.

83. The denial of treatment over the period of August 13, 2021, through October 7, 2021, put Plaintiff at substantial risk of suffering serious harm.

84. In denying Plaintiff treatment over the period August 13, 2021, through October 7, 2021, Defendants HOLM and DOES 3-6 and 11-15 acted under the color of state law.

85. As a proximate result of the decisions of HOLM and DOES 3-6 and 11-15 to deny Plaintiff medical care over the period August 13, 2021, through October 7, 2021, Plaintiff suffered further serious and permanent injuries and substantial physical and emotional pain and suffering.

86. On October 7, 2021, and October 19, 2021, Plaintiff was seen by Defendant DOES 11-15 at the Southwest Detention Center and complained about the pain and loss of vision in his right eye, his head, right hand, and shoulder pain, and his cracked wisdom teeth.

87. With deliberate indifference to Plaintiff and his Fourteenth Amendment rights, Defendants HOLM and DOES 11-15 made the intentional decision to not refer Plaintiff to an optometrist, orthopedist, or dentist in order to save costs or to punish Plaintiff. Reasonable nurses and corrections officers in the circumstances would have appreciated the high degree of risk that delayed treatment could have serious consequences for Plaintiff's vision and health.

88. The denial of referrals to an optometrist, orthopedist, and dentist on October 7, 2021, and October 19, 2021, put Plaintiff at substantial risk of suffering serious harm.

89. In denying Plaintiff referrals on October 7, 2021, and October 19, 2021, Defendants HOLM and DOES 11-15 acted under the color of state law.

90. As a proximate result of the decisions of HOLM and DOES 11-15 to not refer Plaintiff to an optometrist, orthopedist, or dentist, Plaintiff suffered further serious and permanent injuries and substantial physical and emotional pain and suffering.

91. Finally, on or about November 8, 2021, Plaintiff was delivered to an optometrist who determined that Plaintiff had a detached retina.

92. Hence, on or about November 9, 2021, Plaintiff underwent surgery on his right eye. The surgeon confirmed that the retina was detached and was able to partially reattach it. However, the three-month delay in performing the surgery limited its effectiveness.

93. As a proximate result of the deliberate indifference of Defendants HOLM and DOES 3-6 and 11-15 and the delayed surgery, Plaintiff lost much of the vision in his right eye.

94. The eye surgeon prescribed eye drops (4 times daily) to aid the healing and recovery process.

95. On or about January 1, 2022, Plaintiff was transferred to the Benoit Detention Center in Indio, California.

96. At the Benoit Center, Plaintiff continued to voice concerns to Defendant DOES 7-10 and 16-20, and write grievances, regarding his cracked wisdom teeth, continuing head, right hand, and shoulder pain, and the failure of DOES 16-20 to provide his eye drops four times daily as prescribed.

97. With deliberate indifference to Plaintiff and his Fourteenth Amendment rights, Defendants TOCHTROP and DOES 16-20 made the intentional decision to not refer Plaintiff to an orthopedist or dentist, and to not deliver his eye drops four times daily, in order to save costs or to punish Plaintiff. Reasonable nurses and corrections officers in the circumstances would have appreciated the high degree of risk that delayed treatment and missed treatments could have serious consequences for Plaintiff's vision and health.

98. The decisions of Defendant TOCHTROP and DOES 16-20 to deny Plaintiff referrals to an orthopedist and dentist, and to not deliver his eye drops four times daily, put Plaintiff at substantial risk of suffering serious harm.

99. In denying Plaintiff referrals to an orthopedist and dentist, and in failing to deliver his eye drops four times daily, Defendants TOCHTROP and DOES 16-20 acted under the color of state law.

100. As a proximate result of the decisions of Defendant TOCHTROP and DOES 16-20 to deny Plaintiff referrals to an orthopedist and dentist, and to not deliver his eye drops four times daily, Plaintiff suffered further serious and permanent injuries and substantial physical and emotional pain and suffering.

101. The conduct of HOLM, TOCHTROP, and DOES 3-6 and 11-20 was malicious and oppressive and was done with a willful, wanton, and conscious disregard for Plaintiff's Fourteenth Amendment rights.

///

///

**IV.**

**FOURTH CAUSE OF ACTION**

**NEGLIGENCE**

(By Plaintiff Against Defendants DOE 1 and COUNTY)

102. Plaintiff incorporates by reference paragraphs 1-35 as though fully set forth herein.

103. On August 12, 2021, Plaintiff was a pre-trial detainee held at the Robert Presley Detention Center, 4000 Orange Street, Riverside, California 92501. Plaintiff was not arraigned while incarcerated at the Presley Detention Center.

104. Defendant Sheriff Deputies DOE 1 and 2 were ordered to transport Plaintiff, at a high rate of speed, to the Southwest Detention Center in order to arrive there in time (before 12:20 a.m., August 13, 2021) to "re-book" Plaintiff.

105. Defendant DOES 1 and 2 loaded Plaintiff and other inmates (all handcuffed and shackled) into a Sheriff's Department van.

106. The van had no seat belts or other safety restraints to secure Plaintiff, or any of the other inmates, to a seat.

107. Hence, it was foreseeable that, in the event of an accident, Plaintiff and the other inmates would fly across the prisoner compartment like rag dolls. Since their hands were cuffed and secured to waist chains, there was no way for the inmates to break their falls.

108. With DOE 1 driving and DOE 2 in the passenger seat, the van departed Riverside at or about 11:20 p.m. at a high rate of speed to arrive at Southwest Detention Center before 12:20 a.m.

109. In driving Plaintiff to the Southwest Detention Center, Defendant DOE 1 owed Plaintiff a legal duty of care.

110. DOE 1 breached the legal duty of care owed to Plaintiff in that he drove the van at such a high rate of speed, and so dangerously and recklessly, as to cause multiple collisions. Plaintiff and the other inmates were repeatedly thrown across the prisoner

compartment, hitting the metal posts and other hard fixtures inside and/or comprising the prisoner compartment, and landing on top of each other.

111. As a direct and proximate result of DOE 1's negligence, Plaintiff suffered serious injuries to his right eye, forehead, teeth, right hand, and shoulder.

112. As a further proximate result of DOE 1's negligence, Plaintiff suffered substantial physical and emotional pain and suffering.

113. Public employees such as DOE 1 are liable for injuries caused by their acts and omissions to the same extent as a private person. See *Government Code* § 820(a).

114. Defendant COUNTY is responsible for Plaintiff's personal injuries caused by Defendant DOE 1 pursuant to California *Vehicle Code* section 17001 which states: "A public entity is liable for death or injury to person or property proximately caused by a negligent or wrongful act or omission in the operation of any motor vehicle by an employee of the public entity acting within the scope of his employment."

**V.**

**FIFTH CAUSE OF ACTION**

**NEGLIGENCE PER SE**

(By Plaintiff Against Defendants DOE 1 and COUNTY)

115. Plaintiff incorporates by reference paragraphs 1-35 as though fully set forth herein.

116. On August 12, 2021, Plaintiff was a pre-trial detainee held at the Robert Presley Detention Center, 4000 Orange Street, Riverside, California 92501. Plaintiff was not arraigned while incarcerated at the Presley Detention Center.

117. Defendant Sheriff Deputies DOE 1 and 2 were ordered to transport Plaintiff, at a high rate of speed, to the Southwest Detention Center in order to arrive there in time (before 12:20 a.m., August 13, 2021) to "re-book" Plaintiff.

118. Defendant DOES 1 and 2 loaded Plaintiff and other inmates (all handcuffed and shackled) into a Sheriff's Department van.

119. The van had no seat belts or other safety restraints to secure Plaintiff, or any of the other inmates, to a seat.

120. With DOE 1 driving and DOE 2 in the passenger seat, the van departed Riverside at or about 11:20 p.m. at a high rate of speed to arrive at Southwest Detention Center before 12:20 a.m.

121. In driving Plaintiff to the Southwest Detention Center, Defendant DOE 1 owed Plaintiff a legal duty of care.

122. In driving at speeds well above the posted speed limits, DOE 1 violated California *Vehicle Code* sections 22348(a) and (b), 22349(a), 22350, and 23103(a).

123. Plaintiff suffered serious injuries to his right eye, forehead, teeth, right hand, and shoulder when the van collided with other vehicles and stationary objects. The force of the collisions threw Plaintiff across the prisoner compartment, hitting the metal posts and other hard fixtures inside and/or comprising the prisoner compartment.

124. DOE 1's violations of *Vehicle Code* sections 22348(a) and (b), 22349(a), 22350, and 23103(a) were the proximate cause of Plaintiff's injuries and physical and emotional pain and suffering.

125. Plaintiff's injuries resulted from occurrences of the nature that California *Vehicle Code* sections 22348(a) and (b), 22349(a), 22350, and 23103(a) were designed to prevent.

126. On August 12 and 13, 2021, Plaintiff was a member of the class of persons for whose protection *Vehicle Code* sections 22348(a) and (b), 22349(a), 22350, and 23103(a) were adopted.

127. Public employees such as DOE 1 are liable for injuries caused by their acts and omissions to the same extent as a private person. See *Government Code* § 820(a).

128. Defendant COUNTY is responsible for Plaintiff's personal injuries caused by Defendant DOE 1 pursuant to California *Vehicle Code* section 17001 which states: "A public entity is liable for death or injury to person or property proximately caused by

a negligent or wrongful act or omission in the operation of any motor vehicle by an employee of the public entity acting within the scope of his employment."

THEREFORE, Plaintiff prays for judgment against Defendants as follows:

**ON THE FIRST CAUSE OF ACTION (§ 1983 FAILURE TO PROTECT)**

1. For general and special damages;
2. For exemplary and punitive damages;
3. For attorney fees pursuant to 42 U.S.C. § 1988;
4. For costs of suit; and
5. For such other and further relief as the court may deem proper.

**ON THE SECOND CAUSE OF ACTION (§ 1983 FAILURE TO INTERVENE)**

6. For general and special damages;
7. For exemplary and punitive damages;
8. For attorney fees pursuant to 42 U.S.C. § 1988;
9. For costs of suit; and
10. For such other and further relief as the court may deem proper.

**ON THE THIRD CAUSE OF ACTION (§ 1983 FAILURE TO PROVIDE ADEQUATE MEDICAL CARE)**

11. For general and special damages;
12. For exemplary and punitive damages;
13. For attorney fees pursuant to 42 U.S.C. § 1988;
14. For costs of suit; and
15. For such other and further relief as the court may deem proper.

**ON THE FOURTH CAUSE OF ACTION (NEGLIGENCE)**

16. For general and special damages;
17. For costs of suit; and
18. For such other and further relief as the court may deem proper.

**ON THE FIFTH CAUSE OF ACTION (NEGLIGENCE PER SE)**

1. For general and special damages;

2. For costs of suit; and

3. For such other and further relief as the court may deem proper.

SKAPIK LAW GROUP

Dated: July 27, 2022

By: ______________________
Mark J. Skapik
Attorneys for Plaintiff
VICTOR DIAZ SANDOVAL

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury.

SKAPIK LAW GROUP

Dated: July 27, 2022

By: [signature]
Mark J. Skapik
Attorneys for Plaintiff
VICTOR DIAZ SANDOVAL